**Ex parte Jesse SERENIL, Relator.**

**No. 04-86-00454-CV.**

Court of Appeals of Texas,
San Antonio.

June 10, 1987.
Rehearing Denied June 10, 1987.

**72**

John D. Wennermark, San Antonio, for relator.

Ronald C. Bird, Bird & Noll, San Antonio, for respondent.

## ON MOTION FOR REHEARING EN BANC

CADENA, Chief Justice.

The motion for rehearing filed by Alice B. Naranjo is overruled. However, the opinion previously filed is withdrawn and the following is substituted as the opinion of this Court:

Relator, Jesse Serenil, seeks release from confinement imposed because of his failure to make child support payments as ordered in a divorce decree rendered by a Bexar County court on September 19, 1978. Relator argues that the child support provisions of the decree cannot be enforced because, prior to the entry of the divorce decree ordering the child support payments, the Bexar County court, in which the divorce proceedings had been originally filed by Alice, signed an order, in response to a motion filed by her, transferring the "complete files in all matters affecting the child" to "one of the Family District Courts of Harris County."

Alice counters with the contention that, since none of the papers were ever transferred to the Harris County court by the clerk of the Bexar County court, the case never "left" Bexar County and remained on the docket of the Bexar County court.

There is no evidence to support the conclusion that the Bexar County clerk did not obey the order of the court directing him to transfer the "files," certified copies of all entries in the minutes, and a certified copy of any temporary order affecting the parties and their child, all in accordance with provisions of the Texas Family Code.

During the preliminary discussions between counsel and the trial court, the attorney for Alice said that "for some unknown reason the Bexar county clerk never did transfer the case to Harris County." This unsworn statement proves nothing. Jesse's attorney did not concede that the transfer had not taken place.

■ After Alice had testified on direct examination that her attorney had "attempted" to get the case transferred to Harris County, she was asked: "[D]o you know if the case was ever transferred to Harris County?" She answered: "No, it wasn't because a while later we got papers from Jesse's lawyer." She apparently believed that when a case was transferred from one county to another the attorneys stopped all communication with each other. Her assumption that the case had not been transferred because Jesse's lawyer, wherever he might have been located at the

time, sent "us" some papers, is, of course, a complete *non sequitur*, and it is painfully apparent that she had no knowledge concerning the transfer or transmission of any papers from Bexar County to Harris County. Such "evidence," based on a completely unwarranted inference, cannot, in good conscience, be accepted as a sufficient basis for depriving relator of his liberty. It falls woefully short of establishing that the child support order entered by the Bexar County court was entered in a suit affecting the parent-child relationship then pending in that court.

TEX.FAM.CODE ANN. § 3.55(c) and (d) (Vernon 1975) permits transfer of causes of action upon dissolution of marriage when there are children. The order transferring "the complete files in all matters affecting the child" and directing the transmission of certified copies of all minute entries and temporary orders affecting the parties and the child tracks the language of TEX.FAM. CODE ANN. § 11.06(g) in effect at the time of the order transferring the case to Harris County. In the absence of evidence of probative force to the contrary, we must assume that the clerk of the Bexar County court performed the duty imposed on him by statute and by the court order.

In *Faulk v. White*, 79 S.W.2d 910, 911 (Tex.Civ.App.—Dallas 1935, writ dism'd), the Wichita County court, after sustaining a plea of privilege, ordered the case transferred to Dallas County and directed the clerk to prepare a transcript of all orders in the case certify to it and sent it with the original papers to the clerk of the Dallas court. The Witchita County clerk sent the order sustaining the plea of privilege, together with the original papers in the case to the clerk of the Dallas County court, but did not make up a certified copy of all the orders. Nine months after the plea of privilege was sustained and the cause transferred, defendant filed in the Dallas court a motion to dismiss. The order of the Dallas court dismissing plaintiff's suit was affirmed.

In its affirming opinion, the Dallas Court of Civil Appeals said that after a plea of privilege is sustained it is "incumbent on the plaintiff" to cause the case to be transferred to the receiving court "and to cause the filing in that court of a proper transcript." In the absence of the filing of a proper transcript in the receiving court, the defendant is entitled to assail "the transfer on the failure to have in [the receiving] court a proper transcript" and to have the case dismissed.

We must be careful to avoid overlooking what was done in *Faulk* and not pay inordinate attention to the language of the opinion. What was affirmed was an order of the receiving court dismissing the case which had been ordered transferred to it. It is extremely difficult to understand how the receiving court can dismiss a case which, because of the failure of the clerk of the transferring court to perform his ministerial duty, has not really been "transferred" to such court and is, because of such clerical failure, still pending on the docket of the transferring court. A court has no power to dismiss a case pending on the docket of a court in a different county.

The order transferring the case to Harris County became a final order 30 days after July 13, 1979, the date it was signed. *Wichita Falls & S.R. Co. v. McDonald*, 141 Tex. 555, 174 S.W.2d 951, 953 (1943). When the order transferring the case became final, the case stood as though it had originally been filed in Harris County and the Bexar County district court was powerless to deal with the subject matter of the case which it had ordered transferred. *See Sherrill v. Sherrill*, 359 S.W.2d 330, 332 (Tex.Civ.App.—Waco 1962, writ dism'd).

If a court which orders a transfer of a case to another county lacks authority to permit a voluntary nonsuit after the order of transfer has become final, it cannot seriously be contended that such court can enter a judgment on the merits of the case, as the Bexar County court attempted to do in the divorce case which Alice originally filed in Bexar County and then had transferred to Harris County. If, as held in *Faulk*, the receiving court has power to dismiss the transferred case, despite the failure of the clerk of the transferring court to perform his ministerial duty, and

if, as held in *Sherrill*, the transferring court lacks power to enter a judgment of voluntary dismissal after the transfer order has become final, the unavoidable conclusion is that, given a final order of transfer, the case is pending on the docket of the receiving court and not pending on the docket of the transferring court. If a case is not pending on the docket a court obviously has no jurisdiction to do anything concerning the subject matter of such non-pending case. This is clearly a case of lack of jurisdiction over the subject matter, a jurisdiction which cannot be conferred by estoppel or by waiver.

■ To permit the court clerk, simply by failing to perform his ministerial duty, to, in effect, set aside the order of transfer after such order has become final and restore the case to the docket of the transferring court, is to permit such clerk to do that which the transferring court cannot accomplish.

CHAPA, J., concurs.

BUTTS, J., dissents.

CHAPA, Justice, concurring.

I concur with Chief Justice Cadena. The minority opinion fails to heed the Texas Supreme Court in *Seay v. Valderas*, 643 S.W.2d 395 (Tex.1982). In *Seay, supra*, the Texas Supreme Court stated:

Notwithstanding the propriety of the transfer order entered August 24, 1982, Judge Valderas had no authority to exercise control over the suit effecting the parent-child relationship on November 15, 1982.

Once the court has transferred a case, it loses jurisdiction of the child.

Although a transfer order is an interlocutory order, it is final as to the transferring judge once the judge loses plenary power over the order. *See* TEX.R. CIV.P. 329(d).

It seems clear that the Texas Supreme Court considered the date the transfer order was signed by the trial judge more significant as to the loss of jurisdiction than either the propriety of the order or the ministerial actions or inactions of the clerk.

BUTTS, Justice, dissenting.

If the majority views as advocated here on transfer of cases in a divorce action are permitted to stand, they will alter the application of the Texas Family Code statutes remarkably. The prevailing statutes and case law mandate that the court having jurisdiction of the pending divorce action will also hear all matters affecting the parent-child relationship. When the divorce action is pending in one county, the transfer provisions regarding conservatorship and support do not apply to split off that portion of the case under the circumstances presented in the present case. Therefore, I dissent to the conflict this decision creates with the present Texas law.

Alice Serenil filed an original petition for divorce in Bexar County. However, her husband, Jesse J. Serenil, Jr., actually obtained the divorce several months later in September, 1978. To that end Alice signed a waiver of appearance. This means that Jesse (relator now) filed a cross-petition, appeared in court in person, and secured the divorce which resulted in a Decree of Divorce, approved by him and his attorney and also by Alice and her attorney. Alice did not appear in person. The divorce court found that it had jurisdiction of all the parties and subject matter. That judgment granting the divorce, which relator presented to the court, spelled out conservatorship and child support provisions governing the parties' child. It is those provisions and that consent judgment obtained by relator himself which he now collaterally attacks as void.

### TRANSFER ORDER

If the parties are parents of a child, as defined by section 11.01 of the Family Code, and the child is not under the continuing jurisdiction of any other court under section 11.05, the suit for divorce, annulment, or to declare the marriage void, must include a suit affecting the parent-child relationship under subtitle A, Title 2, of the Code. TEX.FAM.CODE ANN.

§ 3.55(b) (Vernon 1975). *In re Allen*, 593 S.W.2d 133, 136 (Tex.Civ.App.—Amarillo 1979, no writ).[1]

A suit for divorce in a district court having jurisdiction (i.e. all necessary residence requirements are met) acquires dominant jurisdiction of the entire controversy, even if a suit affecting the parent-child relationship has been previously filed in another county. Section 3.55(c), (d); *In re Allen* 593 S.W.2d at 137. Moreover, section 11.06(c) confirms that the divorce court is the court with dominant jurisdiction.

In July, 1978, the district court of Bexar County signed an order purporting to transfer the suit affecting the parent-child relationship (SAPCR). This was attempted under the statutory provisions of Title 2, section 11.06(g). There is no provision now, nor was there one at that time, which permits such a transfer under the facts of this case. The divorce suit is dominant, and it is mandatory that the SAPCR be joined in the same court with the divorce. *See, In re Allen, supra.* Section 3.55(c), (d).

The conclusion is that the purported transfer order was void. A court's jurisdiction contains two elements: (1) jurisdiction of the subject matter and (2) jurisdiction of the person. *Ex parte Bowers*, 671 S.W.2d 931, 935 (Tex.App.—Amarillo 1984, no writ). The first element is established by operation of law through the constitutional and statutory provisions that enumerate the kinds of cases the court can entertain. *Id.* The first element was absent in the present case. The district court had no power to issue the transfer order under section 11.06. Its jurisdiction to do so was never invoked since the divorce suit was still pending in Bexar County. § 3.55(c), (d). There had been no dissolution of the marriage, and this court continued as the dominant court for all purposes. More-

over, there had been no other suit filed in Harris County. Therefore, the district court of Bexar County lacked jurisdiction to take away the portion affecting the parent-child relationship and transfer it to Harris county. That purported order of transfer was a void order. It was treated as void and ignored by the parties, particularly the relator, when relator obtained his divorce.

It is now axiomatic that under the facts in this case a Title 2 suit (SAPCR) must be joined and determined along with a pending Title 1 suit of dissolution of marriage. Since no other divorce suit had been filed in Harris County, and a court in Harris County was not the court of continuing jurisdiction, the purported transfer order was void and of no force and effect.

## THE DIVORCE JUDGMENT

The district court subsequently granting the divorce found that it had jurisdiction of the parties and subject matter and proceeded to grant relief on relator's cross-action. The judgment provided that relator would pay child support for his child. Relator now collaterally attacks his own judgment.[2]

Since the relator was cross-petitioner, appearing in court and obtaining the divorce, as well as submitting the written decree and expressly agreeing to be bound by its terms, he cannot now be permitted to avoid the force of the divorce decree to benefit himself. Relator has used the privileges conferred by the judgment and now would declare it void. He secured the divorce, remarried, and is now estopped to assail the validity of the judgment. *See, Biggs v. Biggs*, 553 S.W.2d 207, 209 (Tex.Civ.App.— Houston [14th Dist.] 1977, writ dism'd). A divorce judgment that is valid on its face, and that was not appealed from, cannot be set aside in a subsequent suit by collateral

1. The majority opinion rejects the mandates of section 3.55(c) and (d), which clearly spell out that the court in which the divorce action is filed is the court of dominant jurisdiction and that a SAPCR must be heard with that dominant pending suit of dissolution of marriage.

2. Relator contends: "That on July 13, 1978, this case was transferred to Houston, Texas and the

divorce decree purporting to set child support dated September 19, 1978 entered by the 150th District Court of Bexar [sic] is thus void as the Court did not have jurisdiction of the case or the parties." Relator argues that a Title 2 transfer of SAPCR could transfer an entire divorce action. The majority opinion appears to agree with this theory.

attack. *Marks v. Marks*, 470 S.W.2d 83, 86 (Tex.Civ.App.—Tyler 1971, writ ref'd n.r. e.). The divorce judgment in this case is regular and valid on its face. Relator cannot now collaterally attack its validity.

To accept the theory of the majority would, in effect, cause the "tail to wag the dog." The purported order, void *ab initio*, was never seriously a part of the divorce action. It was ignored until relator seized upon it as a means of impermissible collateral attack on the judgment. therefore, I respectfully dissent to the majority interpretation of the Family Code statutes, sections 3.55(c), (d) and 11.06(c). This interpretation would condone and uphold such an attack and thereby create conflict with Texas law.

